# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

## *FILED IN CAMERA UNDER SEAL*
Filed In Camera and under seal pursuant to 31 U.S.C. § 3730 (b)(2), (B)(3)

UNITED STATES OF AMERICA
and STATE OF FLORIDA

CASE NO.: 8:10 CV 1349 23 TBM

*ex rel.*

DOROTHY HALL

    Plaintiffs

**FILED UNDER SEAL**

**PURSUANT TO 31 U.S.C. §3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**DO NOT ENTER ON PACER**

v.

WELLCARE HEALTH PLANS, INC.,
COMPREHENSIVE HEALTH MANAGEMENT, INC.,
and all subsidiaries of WELLCARE HEALTH PLANS, INC.

    Defendants.
_____/

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1. Dorothy Hall (the "relator") brings this action on behalf of the United States of America and the State of Florida against defendants for treble damages and civil penalties arising from the defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* The violations arise out of false certifications and reports made by

WellCare Health Plans Inc., Comprehensive Health Management Inc., all subsidiaries of WellCare Health Plans Inc., and its nurses to primary care physicians regarding "care plans" that were prepared for patients, without nurse contact with the patient, as falsely and fraudulently represented by the defendants. Hereinafter referred to as "Defendants".

2. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the relator has provided to the Attorneys General of the United States and to the United States Attorney for the Middle District of Florida, and to the Attorney General for the state of Florida a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to relator at her filing establishing the existence of defendants' false and fraudulent reporting. Because the statement includes attorney-client communications and work product of relator's attorneys, and is submitted to the Attorney Generals and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands this disclosure to be confidential.

**Jurisdiction and Venue**

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3730(b), 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331. Hereinafter referred to as "FCA".

4. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 *et seq*. and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants transact and transacted business in this District.

## JURISDICTION and VENUE

5. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732 (2) which authorizes nationwide service of process. Defendants can be found in, reside in or have transacted business in the Middle District of Florida.

6. No allegation set forth in this complaint is based on a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing audit, or investigation, or from the news media.

7. Relator's *qui tam* action alleges that the Defendants have submitted and/or caused to be submitted false and fraudulent member health care plans as part of their contractual payments by Medicare and Medicaid for Medicare and Medicaid members receiving health care under the Defendants' Dual Special Needs Plans ("DSNP").

8. The FCA provides that any person or entity who submits a false claim to the United States government is liable for a civil penalty of between $5,000 and $10,000 for each such claim, and three times the amount of the damages sustained by the government. The Act permits persons (relators) having information regarding the fraudulent claims to bring an action on behalf of the government and to share in any recovery. This complaint must be filed in camera and under seal without service on the defendant. The complaint remains under seal while the government conducts an investigation of the allegations and determines whether to join the action.

9. The Florida FCA also provides civil penalties and treble damages for fraudulent claims submitted to the State of Florida programs.

## THE PARTIES

10. The Relator, Dorothy Hall, is a Florida Registered Nurse employed by Comprehensive Health Plans, Inc., a subsidiary of WellCare Health Plans, Inc. in Tampa, Florida and is a citizen and resident of the State of Florida.

11. The Defendants, WellCare Health Plans, Inc., Comprehensive Health Management, Inc., and all subsidiaries of WellCare Health Plans, Inc., (herein collectively referred to as "WellCare") is a For Profit Corporation.

## FACTS COMMON TO ALL COUNTS

12. WellCare provides managed care services targeted to government-sponsored health care programs, with a major focus on Medicare and Medicaid recipients. According to WellCare's First Quarter Financial Report for 2010, Medicare membership reached approximately 1.0 million recipients and Medicaid membership reached 1.3 million recipients as of March 31, 2010, with premium revenue reaching approximately $1.4 billion for the first quarter of 2010. WellCare also expects their premium revenue to reach approximately $5.30 billion to $5.40 billion for 2010.

13. Medicare is a federally funded program that provides eligible persons age 65 and over and some disabled persons a variety of hospital, medical insurance and prescription drug benefits and is administered by the Centers for Medicare & Medicaid Services ("CMS"). WellCare contracts with CMS to provide managed care to Medicare recipients for a fee under the WellCare name.

14. Medicaid is a state operated and implemented healthcare program although it is funded and regulated by both individual states and the federal government. It was established to provide

medical assistance to low income and disabled persons. WellCare also contracts through states and CMS for a fee to provide managed care to the Medicaid recipients under different brand names depending on the state such as: Florida- Staywell/ Healthease.

15. WellCare also offers special needs plans for those members who are dually eligible for Medicare and Medicaid ("DSNPS"). The managed care programs for DSNPS are specially designed by WellCare to provide individualized care and clinical support for the members with frailties or serious chronic conditions and contracted for fees through the states and CMS.

**DSNP CASE MANAGEMENT PROGRAM**

16. In 2009, the relator and other staff members were provided information concerning WellCare's DSNP program under the new MIPPA regulations which dealt with individual contracts for WellCare's services for DSNP. There is also other nursing staff and administration involved with the DSNP Case Management program at their corporate office. (See Exhibit 1.1)

17. WellCare contracted with CMS to provide comprehensive, cost-effective managed health care services to Dual Eligible Members.

18. Medicare Improvements for Patients and Providers Act of 2008 (MIPPA) was approved by Congress and became law in July of 2008. MIPPA mandates a **health risk assessment, care plan, interdisciplinary care team for members**, and **evaluation of care effectiveness by the health plan**. Plan's Model of Care (MOC) is tailored specifically to the Dual Eligible Members.

**Health Risk Assessment/Conducted by Plan (WellCare)**

19. Plan's Case Management MOC begins with the **Health Risk Assessment (HRA)**. The HRA assesses member risk in the following areas: functional, psychosocial, and medical. Once completed, the HRA is stratified and **reviewed by a DSNP Registered Nurse (RN) Case**

**Manager**. The stratification of the HRA is an indicator of the needs of the member and is **verified with the Comprehensive Medical Assessment**. WellCare utilizes four (4) levels of stratification starting with level 1 (low risk) and going to level 4 (high risk). The RN Case Manager outreaches to the Dual Eligible Member and begins the Case Management process.

**Comprehensive Medical Assessment Conducted by Plan (WellCare)**

20.     The RN Case Manager telephonically conducts the **Comprehensive Medical Assessment** with the Dual Eligible Member and/or Caregiver, if appropriate, in order to collect additional social, medical, and behavioral information to generate a robust *member centric* Individualized Care Plan. The Comprehensive Medical Assessment is based on Clinical Guidelines and allows for the plan of care to be generated utilizing these guidelines.

**Individualized Care Plans (ICP)/ Generated by Plan (WellCare)**

21.     Once the RN Case Manager and the Member/Caregiver complete the **comprehensive medical assessment**, an ICP is generated that reflects the members' specific problems, short and long-term goals, and interventions. The RN Case Manager and the Dual Eligible Member and/or Caregiver, if appropriate, agree on the Plan of Care and set goals. The ICP generated tracks dates and goal progress. The contact times will vary depending on the stratification of the member and specific goal timeframes. The ICP is shared with all members of the Interdisciplinary Care Team (ICT) for input and updates.

**Interdisciplinary Care Team (ICT) / Plan and Providers**

22.     The RN Case Manager shares the ICP with all the members of the Interdisciplinary Care Team (ICT) in an effort to inform all those involved in the member's care and ensure that all are aware of the members' goals and current health status. The RN Case Manager communicates and

coordinates with the members of the ICT (PCP, Specialists, Social Worker, etc.) to assist the member in navigating the health care system, education, and advocacy. The team provides the basis for meeting the goals of the ICP.

**DSNP CASE MANAGEMENT PROGRAM – SUMMARY**

(See Exhibit 1.2)

23. Summary of the benefits of the DSNP Case Management Program:

- All Dual Eligible Members are contacted for a Health Risk Assessment (HRA)
- Members are stratified according to the severity of their disease process, functional ability and psychosocial needs.
- Comprehensive Medical Assessment is completed by RN Case Manager and is the basis for the Individualized Care Plan.
- Individualized Care Plan generated by RN Case Manager in collaboration with the member and Care Team.
- Sharing of Individualized Care Plan with Providers for review and comments as needed.

24. Relator is a Florida Registered Nurse and is employed by WellCare through Comprehensive Health Management, Inc. which is a WellCare subsidiary at their corporate office in Tampa, Florida. The relator's current position is designated as a Triage Nurse in the DSNP program. The relator has been employed at WellCare since August 18, 2008.

25. WellCare entered into contracts with CMS to provide the DSNP services to members knowing it did not have adequate staffing to complete the contractual time limits.

26. WellCare outsourced the DSNP's Health Risk Assessment ("HRA") to Lifeplans, Inc.

27. **Lifeplans, Inc. provided HRA information about the individual members to WellCare. The employees, or agents of Lifeplans Inc. are not licensed nurses and often**

**provided inaccurate patient information. WellCare's DSNP's Registered Nurse Case Managers were then directed to utilize the inaccurate information gleaned from the health care assessment from Lifeplans, Inc. without ever contacting the members to formulate the Individualized Care Plans to meet contractual obligations with the United States Government through CMS.**

28. The Health Risk Assessments performed by Lifeplans, Inc. and returned to WellCare for Registered Nurses to review were made contrary to the Florida Nurse Practice Act, which prohibits nursing assessments to be made by non registered or licensed practical nursing staff.

29. The Nurse Practice Act as defined under Florida Statutes § 464.003 *et seq.*:

(3)(a) "Practice of professional nursing" means the performance of those acts requiring substantial specialized knowledge, judgment, and nursing skill based upon applied principles of psychological, biological, physical, and social sciences which shall include, but not be limited to: The observation, **assessment,** nursing diagnosis, planning, intervention, and evaluation of care; health teaching and counseling of the ill, injured, or infirm; and the promotion of wellness, maintenance of health, and prevention of illness of others.

30. **Further, the Florida Administrative Code 64B9-14.003 Delegation of Tasks Prohibited, denotes "The registered nurse or licensed practical nurse, under direction of the appropriate licensed professional as defined in Section 464.003(3)(b), F.S., shall not delegate:**

(1) Those activities not within the delegating or supervising nurse's scope of practice.

(2) Nursing activities that include the use of the nursing process and require the special knowledge, nursing judgment or skills of a registered or practical nurse, including:

(a) The initial nursing assessment or any subsequent assessments;

(b) The determination of the nursing diagnosis or interpretations of nursing assessments;".

31.     WellCare is using the inaccurate assessments of members' diseases for DSNP Case Management Nurses to build upon to formulate Individualized Care Plans without contacting members to complete the medical assessments.

32.     The Individualized Care Plans with inaccurate information are then being electronically faxed or otherwise communicated to the members' Primary Care Physicians in Florida or throughout the United States where the WellCare Plans are contracted.

33.     The Primary Care Physicians who believe that the assessments and subsequent Individualized Care Plans were made correctly or that the members are being educated on their level of disease management by a licensed nurse are being misled which could pose a serious risk of physical harm or death to members upon the actions or omissions of the Primary Care Physicians.

34.     On or about May, 2010, certain WellCare Case Management Registered Nurses were ordered by WellCare management to complete the Individualized Care Plans based off of the Health Care Assessments obtained from Lifeplans, Inc. from unlicensed personnel with inaccurate information.

35.     WellCare then contracted with Care Management International ("CMI") which in turn had its subsidiary in India, Care Management International Pvt. Ltd., mass produce Individual Care Plans from the backlogged Health Risk Assessments in order to meet the compliance deadline in June 2010. These Care Plans prepared by CMI were not completed by a licensed nurse.

36.     On or about May 13, 2010, WellCare management directed the entire DSNP case managers to stop all other work, not to answer calls or complete new assessments, and were told

to review the care plans to see if there were short and long term goals, sign off on it and fax it to the members' primary care physicians. No true assessments or contacts were done with members.

37. Currently, the WellCare DSNP Case Management nurses are opening up Health Care Assessments and generating Individual Care Plans from that information to fax to primary care physicians with no assessment done to the member.

38. All the Individual Care Plans show the interventions as "in progress", with no disclaimer to the primary care physicians that these interventions have not been started and that the member has not even been assessed by a registered nurse.

39. Primary care physicians or other members of the Individualized Care Team are falsely led to believe that the members' health care needs are being taken care of, from educating members on their disease process to arranging for home health, durable medical equipment or other services that may be needed.

40. The affected members are shown as being actively enrolled in case management programs with all the benefits provided, when they have never been contacted except by unlicensed contract employees from Lifeplans months earlier.

41. WellCare members who were being actively case managed are not having their needs met as case managers were instructed not to take their telephone calls.

## COUNT ONE

**Substantive Violations of the False Claims Act, 31 U.S.C. § 3729 (a)**

42. Relator realleges and incorporates by reference the allegations made in paragraphs 1-41 of this complaint.

43. This count sets forth claims for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-3732, as amended.

44. Through the acts and omissions described above, the Defendants and their agents and employees knowingly presented and caused to be presented to the United States Government false and fraudulent claims, records and statements in order to obtain reimbursement for health care services provided under Medicare in violation of 31 U.S.C. § 3729 (a).

45. The Unites States and its fiscal intermediaries, unaware of the of the fraudulent records, statements, and claims made or submitted by the Defendants and their agents and employees, paid and continue to pay Defendants for care plans that were falsely and fraudulently prepared.

46. By reason of the Defendants' false records, statements, claims and omissions, the United States has been damaged, and possibly continues to be damaged, in an amount yet to be determined.

**WHEREFORE**, Plaintiff/Relator requests on behalf of herself and the United States of America and the State of Florida, that the following relief be granted:

(1) Defendants cease and desist from violating 31 U.S.C. § 3729 *et seq.*:

(2) The Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of 31 U.S.C. § 3729;

(3) The Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 (d) of the Federal Civil False Claims Act;

(4) The Plaintiff/Relator be awarded pre- and post-judgment interest along with all costs and expenses of this action including attorney's fees;

(5) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint; and

(6) The United States and Plaintiff/Relator receive all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff/Relator, on behalf of herself, the United States of America, and the State of Florida, demands a jury trial on all issues alleged herein:

## COUNT TWO

### Substantive Violations of the Florida False Claims Act, § 68.081

47. Relator realleges and incorporates by reference all preceding allegations made in paragraphs 1-46 of this complaint.

48. As stated by § 68.081 of the Act, the purpose of the Florida FCA is to deter persons from knowingly causing or assisting in causing the State Government to pay claims that are false, and to provide remedies for obtaining treble damages and civil penalties for the state government when money is obtained from the State government by reason of a false claim.

49. WellCare is liable pursuant to § 68.082 of the Florida FCA in that WellCare, upon information and belief:

    a. Knowingly presented or caused to be presented to an officer or employee of a Florida State Agency false claims for payment or approval.

    b. Knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by an agency.

  c. Conspired to submit false claims to an agency or to deceive an agency for the purpose of getting false or fraudulent claims allowed or paid.

  d. Otherwise violated the Florida FCA in ways to be proven at trial.

50. Pursuant to § 68.083, a person may bring a civil action for a violation of § 68.082 for the person and the affected agency.

51. Upon information and belief, the Defendants violated the Florida FCA by making or causing to be made false or fraudulent claims with regard to the Florida Medicaid Program, as more specifically alleged in the factual section herein.

52. As a direct and proximate result of Defendants conduct in violation of the Florida FCA, The Relator, Dorothy Hall, and the Florida State Government are entitled to damages as allowed pursuant to the Florida FCA.

**WHEREFORE**, Plaintiff/Relator requests on behalf of herself and the United States of America and the State of Florida, that the following relief be granted:

(1) Defendants cease and desist from violating 31 U.S.C. § 3729 *et seq. and Florida Statutes 68.081 et seq.:*

(2) The Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of 31 U.S.C. § 3729;

(3) The Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 (d) of the Federal Civil False Claims Act;

(4) The Plaintiff/Relator be awarded pre- and post-judgment interest along with all costs and expenses of this action including attorney's fees;

(5) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint; and

(6) The United States and Plaintiff/Relator receive all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff/Relator, on behalf of herself, the United States of America, and the State of Florida, demands a jury trial on all issues alleged herein:

Dated: June 16, 2010

_____
David R. Ristoff
Williams, Ristoff, Proper, P.L.C.
4532 U.S. Highway 19
New Port Richey, Fl 34652
Telephone: 727-842-9758
Fax: 727-848-2494
Florida Bar No: 0358576
Email address: wrplawdrr@yahoo.com
***Attorneys for Relator***